# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

PAMELA HOLDEN, et al.,   *

    Plaintiffs, on behalf of themselves   *     Civil Action No. ELH-19-760
    and others similarly situated,
                                                  *

v.                                            *

BWELL HEALTHCARE, INC., et al.,   *

    Defendants.
                                        *

## MEMORANDUM AND ORDER

Upon consideration of "Plaintiffs' Motion For An Immediate Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing To Enjoin Defendants' Retaliatory Conduct" (ECF 11, the "TRO Motion"), the attached memorandum of law and exhibits, evidence offered by plaintiffs at an evidentiary hearing held on July 15, 2019, as well as argument offered by plaintiffs and defendant Femmy Kuti,[1] and for the reasons explained on the record at that hearing and herein, the Court GRANTS a temporary restraining order, on the terms laid out below.

### I.     Procedural History

On March 12, 2019, plaintiffs Pamela Holden and April Wright filed a putative class and collective action lawsuit against Bwell Healthcare, Inc. ("Bwell"), Femmy Adewale Kuti ("F. Kuti" or "Mr. Kuti"), and Sunlola Kuti, defendants, for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law

---

[1] Defendant Sunlola Kuti did not appear. The corporate defendant, Bwell Healthcare, Inc., also did not appear. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201 (1993) (noting that it "has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel"); Local Rule 101.1(a) ("All parties other than individuals must be represented by counsel").

("MWHL"), Md. Code, § 3-401 *et seq.* of the Labor & Employment Article ("L.E."); and the Maryland Wage Payment and Collection Law ("MWPCL"), L.E. § 3-501 *et seq.* ECF 1. On March 27, 2019, plaintiffs filed proof that defendants were served on March 17, 2019. ECF 3. However, no attorney entered an appearance on behalf of any of the defendants, nor did defendants respond to the suit within the time provided by Fed. R. Civ. P. 12(a)(1)(A)(i). Accordingly, on May 3, 2019, the Court ordered plaintiffs to file a motion for clerk's entry of default pursuant to Fed. R. Civ. P. 55(a), or show cause why such action is not appropriate, within 17 days of the Order. ECF 4.

On May 10, 2019, plaintiffs moved to certify their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) and to facilitate the issuance of notice to all potential class members, and supported their motion with a memorandum of law and exhibits. ECF 5. Also on May 10, 2019, plaintiffs filed a notice with the Court asserting that unless otherwise ordered by the Court, they declined to request entry of default because they "require conditional certification of their FLSA collective action claim so that similarly situated individuals receive prompt notification of the pending suit and have a meaningful opportunity to opt in and pursue their claims through this litigation." ECF 6.

On June 26, 2019, plaintiffs filed a "Consent to Join Collective Action" form signed by Bernetta Gaines. ECF 7. Shortly thereafter, on July 11, 2019, plaintiffs filed a Notice of Voluntary Dismissal on behalf of Ms. Gaines. ECF 8. Also on July 11, 2019, plaintiffs moved to amend their complaint. ECF 9. The proposed amended complaint sought to add a new plaintiff, Stephanie Williams, and to add claims of unlawful retaliation, in violation of the FLSA, on behalf of Ms. Williams and Ms. Holden, based on the allegation that defendants fired them because of this lawsuit. The proposed amended complaint alleged, among other things, that Ms. Williams is Ms.

Holden's sister and that defendants fired Ms. Williams to retaliate against Ms. Holden. ECF 9-1, ¶¶ 32 – 42.

On July 12, 2019, plaintiffs filed the TRO Motion (ECF 11), supported by a memorandum of law (ECF 11-1) and six exhibits. Of note, in Ms. Holden's Declaration (ECF 11-3), she asserted that Ms. Gaines told her that defendants had fired her, too, and that she no longer wished to participate in the suit as a result. *Id.*, ¶ 8. Further, the Declaration referred to other employees of defendants who are potential plaintiffs, and who had been calling Ms. Holden regarding her termination.

Also on July 12, 2019, the Court scheduled a hearing on the TRO Motion for July 15, 2019, at 2:30 p.m., and ordered counsel for plaintiffs to transmit the Order to Defendants by 6 p.m. ECF 12. On July 15, 2019, prior to the hearing, the Court granted plaintiffs' motion to amend their complaint, ECF 13, and accepted that amended complaint for filing. ECF 14.

Beginning at about 2:30 p.m. on July 15, 2019, the Court convened a hearing on the TRO Motion. Plaintiffs Holden and Williams appeared with counsel, and defendant F. Kuti appeared without counsel. Defendant F. Kuti moved several times to postpone the matter, claiming he was attempting to obtain counsel and would be meeting with an attorney today. In light of the fact that this case was filed in March 2019, providing ample time for defendants to obtain counsel, and because of the emergency nature of the TRO Motion, the request for postponement was denied. Thereafter, F. Kuti represented himself at the hearing.

The Court heard the testimony of Ms. Holden concerning, among other things, the circumstances surrounding her termination and the resulting hardship to herself, her sister, and the case.

Termination letters attached to the declarations of plaintiffs Holden and Williams were introduced in evidence. Mr. Kuti agreed that he had authored those letters and did not dispute their authenticity.

The letter addressed to Ms. Holden is dated July 5, 2019, and was received by Ms. Holden on July 9, 2019. *See* ECF 11-3. It states, among other things, *id.*:

> Our office has received documentation(s) that suggest that you, Ms. Pamela Holden, are not satisfy [sic] with the pay structure attached to your category of employment.... At Bwell Healthcare, Inc., we cannot afford to keep a disgruntled and dissatisfied employee with tendencies to be a **saboteur** as part of our direct providers group .... Therefore, we are giving you this notice to inform that we have initiated efforts, working with the Maryland State case monitors, to terminate our relationship with you ....

The letter addressed to Ms. Williams is dated July 9, 2019. *See* ECF 11-4. It states, among other things, *id.*: "This letter is to formally notify you that you are no longer assigned to provide direct care services to" the individual for whom Ms. Williams was assigned to provide care, and accused Ms. Williams was "a disgruntled employee with a poor attitude" with "a tendency to sabotage." The Court also reviewed and considered the other exhibits attached to the TRO Motion.

## II. The TRO Is Appropriate

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren.* 553 U.S. 674, 689-90 (2008)); *see Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds and remanded*, 559 U.S. 1089 (2010), *aff'd in part and remanded*, 607 F.3d 355 (4th Cir. 2010). Rather, it is a remedy that is "'granted only sparingly and in limited circumstances.'" *Micro Strategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)).

To obtain a TRO, the movant must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see Munaf*, 553 U.S. at 689-90; *Amoco Prod Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982); *see also Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1944 (2018); *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011); *Real Truth About Obama*, 575 F.3d at 345 (applying the standard for preliminary injunctions set forth in *Winter*). The "'[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction.'" *Direx Israel*, 952 F.2d at 812 (quoting *Tech. Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984); *Shaffer v. Globe Prod, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983)).

As to the likelihood of success, the Court found it likely that plaintiffs Holden and Williams would succeed on their retaliation claims. This conclusion was based on the content of the termination letters, Ms. Holden's testimony, and other evidence. In particular, the letters accuse plaintiffs of engaging in sabotage and of being disgruntled employees, an apparent reference to their relationship to this lawsuit.

As to irreparable harm, the Court found that plaintiffs Holden and Williams would suffer irreparable harm without a TRO. Based on the evidence presented, they earn gross pay of just $11 per hour. Ms. Holden testified that she lives with her sister, plaintiff Williams, and that they live paycheck to paycheck. She stated that without their work, they will not be able to pay the mortgage or other bills that will come due. And, given their minimal wages, it is unlikely that plaintiffs have

savings or other means of paying their mortgage and meeting their financial obligations. Therefore, they face dire consequences if their employment is not restored. And, although the Court notes that unemployment insurance benefits may be an option, the Court recognizes that such benefits may be contested, may take time, and would only replace a portion of plaintiffs' wages.

As to the balance of equities, the Court found that the high degree of harm facing plaintiffs Holden and Williams far exceeds the harm that defendants would suffer from reinstatement of the employees. Indeed, Mr. Kuti admitted that he would not be harmed by reinstating plaintiffs.

As to the public interest, the Court noted the public interest reflected in the FLSA's anti-retaliation provision. Among other things, it renders it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Moreover, the FLSA is a remedial statute. *See Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) (quoted in *Schultz v. Capital Int'l Security, Inc.*, 466 F.3d 298, 304 (4th Cir. 2006)). Enforcement of the FLSA's anti-retaliation provisions serves the public interest by ensuring that a claimant is not punished for seeking the minimum and overtime guarantees provided under the FLSA.

In addition, swift enforcement ensures that the exercise of rights is not chilled and that the effectiveness of the FLSA is not undermined. The fact that Ms. Gaines withdrew from this case after being terminated, and that other workers called Ms. Holden inquiring about the terminations, suggests to this Court that the public interest weighs in favor of the restoration of employment for plaintiffs Holden and Williams.

Accordingly, it is this 16th day of July, 2019, ORDERED:

1. The TRO Motion (ECF 11) is GRANTED;

2. Defendants shall immediately reinstate the employment of Ms. Pamela Holden and Ms. Stephanie Williams to their positions with defendants under the same terms as they were employed before they were discharged;

3. Defendants are prohibited from taking additional unlawful adverse employment action against Ms. Holden, Ms. Williams, and any other home care aides employed by defendants who may participate in this lawsuit. Unlawful adverse employment action includes retaliation for any real or perceived interest in joining the present lawsuit;

4. Defendants and their agents, including office staff, are prohibited from communicating with any other home care aides employed by defendants concerning Ms. Holden or Ms. Williams, unless necessary to ensure coverage of their shifts for some reason, such as illness or injury. They are further prohibited from communicating with other home care aide employees regarding this lawsuit, including but not limited to any interest in knowledge of or participation in the suit, or any consequences of participation in or sympathy for the lawsuit;

5. This TRO shall expire 14 days from the date of this Order (*i.e.*, July 29, 2019) at 5:00 p.m., unless before that time the Court, for good cause, extends it or the adverse parties consent to an extension;

6. The parties shall appear for a hearing at 2:00 p.m. on Tuesday, August 20, 2019, in Courtroom 5B of the U.S. Courthouse in Baltimore, on the question of whether the Court should grant a preliminary injunction, as requested by the plaintiffs in their TRO Motion; and

7. Plaintiffs Holden and Williams shall each submit $10 to the registry of the Court as security under Fed R. Civ. P. 65(c), an amount the Court considers appropriate given the plaintiffs' financial circumstances and the lack of harm facing defendants if this Order is wrongly issued.

_____/s/_____
Ellen Lipton Hollander
United States District Judge